THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSIE I. BARRERA,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF BUCKS et al.<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 14-7136 |

MEMORANDUM RE: DEFENDANTS' MOTIONS TO DISMISS

Baylson, J.                                                                                      July 21, 2015

## I.        Introduction

Plaintiff Rosie Barrera ("Barrera") seeks redress for injuries suffered during her imprisonment at Bucks County Correctional Facility ("BCCF"). While serving as an inmate, she was allegedly sexually assaulted by Lieutenant Brendan Triplett ("Triplett") on numerous occasions. She asserts that Bucks County is also liable for her injuries, pointing to deficiencies in policy, procedure, supervision, and training that led to sexual misconduct.

Barrera grounds her claim against Defendant County of Bucks ("Bucks County") under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) and 42 U.S.C. § 1983 for violations of her Constitutional rights during her imprisonment. Bucks County moved to dismiss the claim under Federal Rule of Civil Procedure 12(b)(6) for failing to meet the pleading standard as outlined by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). For the reasons elaborated below, the Motion to Dismiss is DENIED.

## II.    Factual Allegations

Plaintiff Rosie Barrera was an inmate at BCCF from February 2013 to June 2013. [1] Am. Compl. ¶ 5. (ECF 9). She was transferred to the Women's Community Corrections Center ("WCCC") in June 2013 and served there until October 2013. Id.

While at BCCF, Barrera claims that she was the recipient of sexual advances by Triplett, initially an officer at the facility. Id. ¶ 7. Barrera contends that Triplett made this inappropriate contact in broad view of other inmates and officers. Id. ¶ 8. Though his sexual relationships with inmates were common knowledge, the other officers purportedly conformed to a "code of silence," so they did not report these incidents. Id. ¶ 19. The administration took no action to protect the inmates or punish Triplett. Id.

In fact, BCCF promoted Triplett to Lieutenant and made him a supervisor at WCCC. Id. ¶ 10. As a supervisor, Triplett had increased access to inmates at WCCC and used this to escalate contact with Barrera upon her transfer to this work release facility in June 2013. Id. ¶ 11. [2] Barrera asserts that Triplett made suggestive comments, kissed her, fondled her, and instigated intimate contact. Id. Triplett followed her around the facility, including rest rooms and closets, making her feel unsafe in all areas of the center. Id. ¶¶ 11-13. [3] As a supervisor, Triplett knew which areas of WCCC had no surveillance and suggested the toilet as a place for sexual contact. Id. He also followed her into the office area during a black-out at the facility, making her workspace unsafe. Id. ¶ 13. Barrera claims that Triplett threatened her to assure her compliance and silence. Id. ¶ 11. [4]

---

[1] For purposes of a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6), all factual allegations made by the plaintiff are taken to be true. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).
[2] There are two paragraphs listed as ¶ 11 in the amended complaint. The citation refers to the first one.
[3] This citation refers to the second ¶ 11.
[4] This citation refers to the second ¶ 11.

A significant incident occurred during Columbus Day weekend of 2013. Id. ¶ 14. Barrera was meeting with Officer Tabitha Carr, a female officer, in the administrative office area where there were no surveillance cameras. Id. Triplett came into the office area around 11 p.m. and purposely stood by the plaintiff near a knee wall. Id. He deliberately dropped the mail he was carrying in order to fondle Barrera's leg as he retrieved the mail. Id. ¶¶ 14-15. He dropped the mail again as a ruse to touch Barrera's inner thigh. Id. ¶ 15. He then pushed his hand down Barrera's pants and touched her genital area. Id. ¶ 16. He then took out his own genitals and had Barrera touch him. Id. This occurred with Officer Carr in the room, who did not stop it or report it. Id. ¶ 17. It is unclear what Officer Carr was able to see through the knee wall partition. Triplett threatened Barrera to keep their relationship quiet, ordering her to "take it to the grave." Id. ¶ 18. According to Barrera, he also threatened Officer Carr. Id. Barrera told no prison officials of this sexual contact out of fear. Id. Additionally, Barrera feared institutional backlash, as other inmates who reported sexual contact with guards were placed in solitary confinement. Id.

Bucks County correctional officers were given training on a code of ethics, but Barrera alleges the code was constitutionally deficient and also inadequately followed. Id. ¶¶ 20-21.[5] Expert reports alerted Bucks County that stopping sexual assaults at its prison facilities would require a larger overhaul. Id. ¶ 20. Additionally, corrections officers failed to implement the policy at hand, failing to report or investigate sexual assaults. Id. ¶ 21. Inmates, too, failed to report misconduct since solitary confinement would be the result. Id.

Sexual contact between guards and inmates has been an issue at BCCF and WCCC throughout the history of the facilities. Id. ¶ 22. In the last 25 years, at least 20 officers in the prison have been fired, arrested, or jailed for sexual assault of female inmates. Id. Bucks County

---

[5] Paragraphs 20-22 are used twice. The citations until footnote 7 refer to the facts listed on pages 6-7.

allegedly was and is aware of the possibility of such conduct, though they viewed the incidents as isolated events, and took incremental measures to address it throughout the history of BCCF and WCCC. Id. ¶ 20.[6]

Upon its inception, BCCF quickly discovered that allowing regular officers into the women's block provided an avenue for sexual assault of inmates. Id. ¶ 22.[7] After five years of reports of sexual assault, the prison removed access for regular corrections officers and only allowed male supervisors and counselors into the BCCF women's block and WCCC. Id. However, in 2003, male counselors and supervisors were arrested for assaulting the female inmates, so the county instituted a policy whereby lieutenants and sergeants were not allowed to enter the women's housing block in the main facility (BCCF) without a female escort. Id. ¶ 23. The same policy was not implemented at WCCC. Id. ¶ 24. Barrera alleges that this policy was a supervisory blind spot, allowing Lieutenant Triplett, the highest ranking officer on duty at night, unfettered access to her. Id. ¶¶ 24-25.

A new code of ethics training was also instated after the aforementioned incident in 2003. Id. ¶ 21.[8] The plaintiffs' expert, a retired assistant director of the Federal Bureau of Prisons, outlined the type of ethics training and supervision needed to stop assaults in the Bucks County prison system. Id. Bucks County did not adopt these suggestions, choosing to implement other adjustments. Id. Just four months after the new ethics training, a Lieutenant David Rosser was arrested and convicted of sexually assaulting female inmates. Id.

Additionally, such codes and policies were repeatedly not followed. Barrera asserts that officers did not follow procedures outlining the reporting of sexual assault due to a culture of silence and fear. Id. ¶ 26. The alleged "code of silence" encouraged other officers to keep silent

---

[6] This citation refers to the fact listed on page 9.
[7] This citation refers to the fact listed on page 10.
[8] This citation refers to the fact listed on page 9.

about Triplett's widely known conduct with female inmates. Id. ¶ 27. Barrera points to prior incidents where officers failed to report sexual misconduct, including one incident where a nursing supervisor had a female inmate fired because male officers would not leave her alone, but did not report the inappropriate contact. Id. In the case at hand, Barrera alleges that Officer Carr, who witnessed Triplett's sexual assault of Barrera, was not "properly trained in how to react, report and investigate sexual abuse." Id. ¶ 26. Officer Carr did not report the incident. Id. ¶17.

## III.   Procedural History

Plaintiff Barrera filed a complaint in federal district court for her Monell claim on December 17, 2014. Compl. (ECF 1). Defendant Bucks County filed a Motion to Dismiss for failure to state a claim on March 16, 2015. Mot. to Dismiss. (ECF 5). Barrera promptly amended her complaint and filed it on March 30, 2015. Am. Compl. (ECF 9). This was soon followed by another Motion to Dismiss for failure to state a claim on April 13, 2015. Second Mot. to Dismiss. (ECF 12). Barrera promptly responded to the Motion to Dismiss on April 27, 2015, and requested to amend her response to correct a factual misstatement. Pl.'s Response; Pl.'s Mot. to Am.. (ECF 15; ECF 17).

## IV.   Parties' Contentions

Defendant Bucks County contends that Barrera's Amended Complaint does not put forward facts upon which an inference of liability can be made and thus does not meet the pleading standard advanced by Twombly and Iqbal. Second Mot. to Dismiss at 6. Bucks County posits that the Amended Complaint is comprised of conclusory statements rather than articulated facts in regards to the liability of the municipality. Id. They argue that only the incident observed

by Officer Carr articulates facts, but does not demonstrate the required causal link between the execution of a deficient policy and the injuries suffered. Id. at 8.

Plaintiff Barrera argues that the policy, supervision, training, and maintenance of Bucks County's prison facilities were the direct and proximate cause of the violation of her rights under § 1983. Am. Compl. ¶ 38.  She alleges that the County knew or should have known the direct threat their policies and customs posed to female inmates, demonstrating deliberate indifference to the constitutional rights, health, and safety of the female inmates. Id. ¶ 37. Among many assertions, Barrera contends that Triplett's sexual misconduct at BCCF was well known yet unreported, that the facility knew of his transgressions before promoting him to lieutenant, that they did not implement policies restraining access of male officers at WCCC like they had at BCCF, and that Officer Carr's failure to report sexual assault was a result of improper training and a patterned culture of silence. Id. ¶¶ 29, 31.

Barrera responds that these facts, under the backdrop of a well documented history of sexual misconduct at the facility, are suggestive of the proscribed conduct – that the municipal entity knew and disregarded deficient policies and customs that fostered constitutionally forbidden behavior - and are thus sufficient to survive a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6). Pl.'s Am. Response at 11-13.

## V.    Jurisdiction and Standard of Review

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as

true all well pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) "expounded the pleading standard for 'all civil actions.'" 556 U.S. at 684.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U .S. at 556 n. 3)).

**VI.    Analysis**

Defendant Bucks County moved to dismiss Plaintiff Rosie Barrera's § 1983 claim, challenging that Plaintiff has failed to allege facts sufficient to infer liability on the part of the municipality. Second Mot. to Dismiss. Plaintiff Barrera asserts that her rights under the Eighth and Fourth Amendments were violated by Bucks County and grounds this under 42 U.S.C. § 1983. In reviewing a 12(b)(6) motion, the Court must be able to make a "reasonable inference" that the defendant is liable for the alleged conduct. Iqbal, 556 U.S. at 678. Ultimately, a

7

complaint must demonstrate enough to raise the reasonable expectation that discovery will reveal the necessary elements to ground a claim. Phillips, 515 F.3d at 234.

Barrera alleges facts that indict the policy and custom of BCCF and WCCC, pointing to procedures and policies that potentially fostered constitutionally forbidden behavior in the form of sexual assault by Lieutenant Triplett. In order to establish a § 1983 claim, a plaintiff must show that a constitutional right was violated by a person acting under the color of state law. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). In establishing municipal liability under Monell, a plaintiff must demonstrate that the alleged violations were sought or sanctioned by policy or custom. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell, 436 U.S. at 690). Barrera's complaint alleges specific facts concerning Triplett's conduct within the prison system, pointing to the prison's history of sexual assault by guards, a systemic failure to report such assaults, deficiencies in the ethics and procedural training of guards, and oversight in the promotion and supervision of guards.

Policy or custom can be established in two ways: (1) a plaintiff can show that the policy was propagated by a decisionmaker with final authority with respect to the action in question, or (2) a plaintiff can show that a custom exists when the practices of municipal officials are so "permanent and well settled" that they operate as law. Jiminez v. All Am. Rathskeller, 503 F.3d 247, 250 (3d Cir. 2007) (quoting Monell, 436 U.S. at 690). "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)).

Barrera identifies multiple policies propagated by Bucks County that allow the Court to plausibly infer that discovery may anchor municipal liability. Barrera claims there is a deficiency in the promotion and hiring practices of the prison, noting that Triplett was promoted to lieutenant despite the alleged "common knowledge" of his sexual misconduct. Am. Compl. ¶ 10. Additionally, Barrera cites a lack of female supervisors at WCCC, who could serve as chaperones in the way they do at BCCF. Id. ¶ 24. On a similar note, though Bucks County knew the risk of sexual assault by unchaperoned male guards, they only require male supervisors at BCCF to be escorted by a female guard. ¶¶ 23-25. Without this policy at WCCC, Triplett was the highest ranking officer on duty at nights at the work release center and unchaperoned. Id.

Barrera also asserts that the code of ethics training was deficient because decisionmakers chose to implement a particular code even though they had notice that stronger overhaul was needed. Id. ¶ 21. Bucks County's choice of code may be reasonable and the plaintiff must demonstrate a causal link between the code and the assault. However, Barrera has alleged facts sufficient to allow for discovery to determine the decision-making process given the prison's history of sexual misconduct.  In addition to the code itself, Barrera alleges that the guards were not properly trained in its procedures, as evidenced by Triplett's known and unreported misconduct and the inaction of Officer Carr. Id. ¶¶ 10, 17.

Furthermore, Barrera points to customs at the prison. Barrera alleges that there was a "code of silence" where prison guards protected each other from the consequences of their misconduct. Id. ¶ 27. Barrera points to multiple instances of administrators, officers, and superior officers failing to report, turning a blind eye, or negotiating lower punishment in the event of sexual assault by prison guards. Id. Additionally, the prison's policy of placing inmates who report sexual assault into solitary confinement allegedly keeps inmates silent. Id. ¶ 21. Plaintiff

will have to prove acquiescence to well settled customs, but she has alleged sufficient factual content by which it is plausible that discovery could demonstrate such culture and compliance.

After identifying a policy or custom, a plaintiff must demonstrate that the municipal entity perpetuated this practice with "deliberate indifference" to the constitutional violations it caused. Beck, 89 F.3d at 972. Deliberate indifference entails more than "negligent failure to recognize" the potential harm, Black by Black v. Ind. Area Sch. Dist., 985 F.2d 707, 712 (3d Cir. 1993). A prison official must "know and disregard" the noted risk to an inmate's safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "The Third Circuit has held that evidence of such policies, including evidence which points to a 'code of silence among officers' and a municipality's concomitant refusal to take disciplinary action, can be sufficient to establish a Monell claim." Hellyer v. Cnty. of Bucks, No. CIV.A. 10-2724, 2014 WL 413874, at *4-5 (E.D. Pa. Jan. 31, 2014) (citing Bailey v. Cnty. of York, 768 F.2d 503, 507 (3d Cir. 1985)).

Barrera alleges that BCCF decision makers were aware of Defendant Triplett's prior misconduct, that Bucks County adopted a deficient code of ethics despite notice, and that failing to report sexual assault by guards was well documented. Am. Compl. ¶¶ 9, 21, 27. Bucks County had knowledge of the threat that unchaperoned male guards posed to female inmates, as demonstrated by incremental policy changes at BCCF, but they did not institute the same policies at WCCC.[9] Id. ¶¶ 23-25. For purposes of the Motion to Dismiss, Barrera has posited

---

[9] While there may be a reasonable explanation for the staggered implementation of such chaperone policies, it is worth noting a case that refutes administrative inconvenience as an excuse for not addressing a known and correctable risk. Bielevicz v. Dubinon involved a precinct that was unlawfully incarcerating individuals for public intoxication without probable cause, but the decision-making officer didn't address the practice because the police department was being reorganized. 915 F.2d 845, 852 (3d Cir. 1990). This administrative hurdle did not absolve him of a finding of deliberate indifference. Id.

sufficient facts that should allow her the chance to discover the municipality's knowledge and disregard of such risks given the history of sexual assault.

Lastly, because "there is no respondeat superior theory of municipal liability," <u>Sanford v. Stiles</u>, 456 F.3d 298, 314 (3d Cir. 2006), a plaintiff must demonstrate that the policy or custom is directly linked to the violation of plaintiff's protected rights. <u>See</u> <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397 (1997). Causation can be established when policymakers are aware of similar unlawful conduct in the past and fail to take precautions, which in turn led to the injury in question. <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 851 (3d Cir. 1990). The Third Circuit has held that a municipality's failure to act after having received notice that its procedures were constitutionally deficient creates a question of fact with respect to causation. <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663 (3d Cir.1988), <u>cert. denied</u>, 489 U.S. 1065 (1989).

Bucks County received such notice. In a prison sexual assault case before the Eastern District of Pennsylvania, Judge Marvin Katz issued a warning to Bucks County: "The problem, however, appears to be a recurring one. Bucks County's response has not risen above the level of deliberate indifference. Failure to take even stronger measures from this point forward could expose the County and its Commissioners to the risk of liability." [10] <u>Horak v. County of Bucks</u>, No. 03-4695, 2004 WL 877965, at *1 (E.D. Pa. Apr. 13, 2004) (ECF 60). This warning was cited in Barrera's response, rather than her Amended Complaint, but it is a public record that can be independently considered by the Court for purposes of a Motion to Dismiss. <u>See</u> <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that courts "consider only the allegations contained in the complaint, exhibits attached to the complaint and

---

[10] The plaintiff in <u>Horak</u> was a female inmate who had been sexually assaulted by a Lieutenant in 2004. The claims against the county did not survive summary judgment, but caused Judge Katz to note the patterned problems in the prison system and issue this warning. <u>Horak v. County of Bucks</u>, No. 03-4695. 2004 WL 877965, at *1 (E.D. Pa. Apr. 13, 2004) (ECF 60) (granting Motion for Summary Judgment).

matters of public record" when deciding a motion to dismiss). Nonetheless, Barrera has also asserted the recurrence of sexual assault at the prison, along with the continued policies and customs that potentially foster such behavior, creating an inference in regards to causation sufficient to survive a motion to dismiss.

**VII.    Conclusion**

For the foregoing reasons, the Defendant's Motion to Dismiss (ECF 12) is DENIED. An appropriate order follows.

O:\CIVIL 14\14-7136 barrera v. ctny bucks\14cv7136.Memo.re.Barrera.MTD.2015.07.14.docx